# EXHIBIT K
## to

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Civil Action No.: 1:10-cv-00986-JFA**

*Report of Hearing Panel dated 9/22/10*



September 24, 2010                    Certified Mail # 70081830000028165232

                                      CONFIDENTIAL

Margo Muniz, M.D.
410 University Parkway, Suite 2300
Aiken, South Carolina 29801

Re: Notice of Judicial Hearing Decision

Dear Doctor Muniz:

The Judicial Hearing Committee has concluded its deliberations concerning the Medical Executive Committee's recommendation to terminate your privileges. The hearing panel recommendations are stated in the attached report. The recommendation to be submitted to the Board of Governors is as follows:

- The action of the Medical Executive Committee should be affirmed.

Either party may appeal this decision by submitting a request in writing within ten days of this notice. This request shall be delivered to the Chief Executive Officer, either in person or by certified mail, return receipt requested, and shall include a statement of the reasons for appeal and the specific facts or circumstances which justify further review.

> Carlos Milanes, CEO
> Aiken Regional Medical Center
> 302 University Parkway
> Aiken, South Carolina 29801

The grounds for appeal, as defined in the Medical Staff Bylaws, shall be limited to the following:

1. There was substantial failure to comply with this Policy and/or the Bylaws of the Medical Center or Medical Staff during or prior to the hearing, so as to deny a fair hearing; and/or
2. The recommendations of the Hearing Panel were made arbitrarily or capriciously and/or were not supported by credible evidence.

302 University Parkway • Aiken, SC 29801
803-641-5000                                                        www.aikenregional.com

 *Accredited by the Joint Commission on Accreditation of Healthcare Organizations*     *2005 UHS Service Excellence Award Winner*

If an appeal is not requested within 10 days, an appeal is deemed to be waived and the Hearing Panel's report and recommendation shall be forwarded to the Board for final action.

Sincerely,

Carlos Milanes
Chief Executive Officer


Enclosure: Hearing Panel Report


cc: Francis DiBona, MD – Chairman Medical Executive Committee
    Celeste T. Jones, Esquire
    Thornwell F. Sowell, Esquire

## <u>AIKEN REGIONAL MEDICAL CENTERS</u>

### REPORT OF THE HEARING PANEL
*(Confidential Medical Staff Proceedings)*

September 22, 2010

*IN THE MATTER OF MARGO MUNIZ, M.D.*

      This is the formal report of the Hearing Panel, which consisted of the following individuals, with specialties as noted: Christopher J. Robinson, M.D. (OB.GYN-Maternal Fetal Medicine), Alyssa M. Degnan, D.O. (Internal Medicine), Robert R. Searles, D.O. (Radiology), Timothy R. Kinsey, M.D. (Pediatrics), and Allison J. Buchanan, M.D. (General Surgery). Ernest J. Nauful, Jr., Esquire, served as Hearing Officer. An initial Hearing Panel was appointed, but as a result of both challenges and resignations following appointment, this panel was appointed, without objection by the MEC or Practitioner.

      These proceedings were commenced initially as the result of a summary suspension of the clinical privileges at Aiken Regional Medical Centers ("ARMC") of Margo Muniz, M.D. (hereinafter "Practitioner"). The reason for the suspension of Practitioner's clinical privileges was a catastrophic outcome (death) of a 30-31 week fetus following a placenta abruption of her obstetrical patient (hereinafter "Patient #6"). This incident occurred on February 23, 2010. Following such suspension, Practitioner requested and on March 9, 2010 was granted the opportunity to appear before the Medical Executive Committee ("MEC") in order to provide her version of the circumstances surrounding the incident and to answer any questions her peers might have about the care of Patient #6. Subsequently, the Medical Executive Committee found that Practitioner's care of Patient #6 and death of the baby were the result of her failure to timely recognize the abruption and timely perform a cesarean section and by administering an inappropriate medication to Patient #6.

      The action of the MEC in affirming Practitioner's summary suspension, thereby revoking her clinical privileges, triggered her right to a fair hearing under the Credentialing Policy of Aiken Regional Medical Centers ("Credentialing Policy"), which is part of the governing Medical Staff Bylaws.

      After notices, timely and properly served, hearings were conducted on June 28 and 29, and August 17, 2010 at ARMC, at which time all parties and their respective representatives were present. Also present at the hearings were representatives of the MEC, including the Chief of Staff, Dr. Francis DiBona, and its counsel, the Practitioner and her counsel, and the Hearing Panel and Hearing Officer.

      During the course of the proceedings, each party was afforded the opportunity to present evidence, cross-examine witnesses, and introduce exhibits. As provided in the Credentialing Policy, both the MEC and Practitioner were allowed the assistance of

counsel, but not direct participation of counsel in the examination or cross-examination of witnesses. However, in several instances, wide latitude was granted to the attorneys for both parties to argue legal points on behalf of their respective clients, and to interpose objections to the admission of evidence.

Although the Credentialing Policy required the MEC to first present evidence in support of it recommendation (Section 7.D.1), the Hearing Officer accommodated, without objection, requests of both parties to offer the testimony of witnesses out of order because of scheduling difficulties.

An objection was made by Practitioner to the introduction of affidavits from Patient #6 and her mother in lieu of their testimony. This objection was sustained, but over Practitioner's objection the Hearing Officer ruled that they would be allowed to testify since Practitioner had made an issue of the patient refusing to have a cesarean section and wanting to be transferred. At the conclusion of the testimony of the mother of Patient #6, the MEC again moved to introduce into evidence an affidavit of Patient #6 due to her severe emotional state. This request was denied.

Once a record is established and evidence submitted, Section 7.D.2 of the Credentialing Policy establishes the basis of any Hearing Panel recommendation in the following manner: "...the Hearing Panel shall recommend in favor of the Medical Executive Committee unless it finds that the individual who requested the hearing has proved, by clear and convincing evidence, that the recommendation that prompted the hearing was arbitrary, capricious, or not supported by credible evidence".

In accordance with Section 7.D.2 of the Credentialing Policy the Hearing Panel determined that final adjournment is deemed to be receipt of the transcript of the third hearing, which was delivered to the Hospital on September 10, 2010.

Due consideration being given to the totality of the evidence presented, including the testimony of all of the witnesses and documents submitted into evidence, the Hearing Panel finds and concludes:

1. The action of the Medical Executive Committee was neither arbitrary nor capricious, but was well supported by credible evidence contained in the record.

2. The evidence before the Hearing Panel inexorably must lead to the conclusion that during the course of these proceedings Practitioner lacked candor in dealing with her peers.

3. The testimony of the Practitioner, when considered with other evidence in the record raises serious questions regarding her credibility. Clearly, she repeatedly asserted that Patient #6 had refused a cesarean section, a fact she later recanted in the face of contradictory testimony.

4. Lack of credibility is further demonstrated by post-incident entries which are inconsistent with other credible evidence.

5. Practitioner's testimony regarding transferring Patient #6 was initially asserted to be the patient's desire, while later it was asserted the issue of transfer was only discussed in the context of after the baby was delivered. Clearly, throughout her testimony and during her examination of her medical experts and others, Practitioner asserted it was the patient's desire to be transferred prior to delivery

6. Practitioner exercised poor judgment in both contemporaneous medical records entries and more specifically in the statement she submitted to the MEC. Furthermore, several inconsistencies in this statement were noted.

7. Although the effect on the ultimate outcome cannot be determined with any degree of specificity, Practitioner's decision to leave the hospital when there was fetal distress and a suggestion of a placental abruption demonstrates poor clinical judgment.

8. While an argument can be made that a delay in performing a cesarean section did not effect the ultimate outcome, the greater weight of the evidence from experts on behalf of both the MEC and Practitioner is that the patient should have been sectioned much sooner. Again, this delay demonstrates poor clinical judgment on the part of Practitioner.

Recommendations

1. The action of the Medical Executive Committee should be affirmed.

*[signature: Robert F. Searles D.O.]*

Robert R. Searles, D.O.
Chair, Hearing Panel