# EXHIBIT N
## to

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Civil Action No.: 1:10-cv-00986-JFA**

*Emails from Nauful*

| | |
|---|---|
| **From:** | Ernie Nauful |
| **To:** | Ergle, Terri |
| **Sent:** | 10/11/2010 2:44:16 PM |
| **Subject:** | RE: Request Letter |
| **Attachments:** | hearing panel report.101110.doc |



Terri,

Attached is a corrected report of the Hearing Panel. Please provide a copy of this draft to the panel members at ARMC and email a copy to Dr. Robinson. It is undated until we re-convene either in person or by telephone. If you can set it up for today I can make myself available by telephone.

Thanks

Ernie

---

**From:** Ergle, Terri [mailto:Terri.Ergle@uhsinc.com]
**Sent:** Monday, October 11, 2010 9:44 AM
**To:** Ergle, Terri; Jones, Celeste; Petok, Gary; Ernie Nauful
**Subject:** RE: Request Letter

Can anyone tell me where we are with this? We need to get it resolved ASAP.

Thanks

Terri Ergle, CPCS
Aiken Regional Medical Centers
302 University Parkway
Aiken, SC 28901
Phone 803-641-5197
Fax 803-641-5690

---

**From:** Ergle, Terri
**Sent:** Friday, October 08, 2010 12:31 PM
**To:** Jones, Celeste; Petok, Gary
**Subject:** FW: Request Letter

Copy of correspondence sent to Mr. Nauful

Terri Ergle, CPCS
Aiken Regional Medical Centers
302 University Parkway
Aiken, SC 28901
Phone 803-641-5197
Fax 803-641-5690

---

**From:** Ergle, Terri
**Sent:** Friday, October 08, 2010 12:29 PM
**To:** 'Ernie Nauful'
**Subject:** Request Letter

Please see attached correspondence. Call me so we can discuss next step.

Thanks
Terri Ergle, CPCS

CONFIDENTIAL                                                                                       ARMC002414

Aiken Regional Medical Centers
302 University Parkway
Aiken, SC 28901
Phone 803-641-5197
Fax 803-641-5690

UHS Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this information is prohibited, and may be punishable by law. If this was sent to you in error, please notify the sender by reply e-mail and destroy all copies of the original message.

## AIKEN REGIONAL MEDICAL CENTERS

### CORRECTED
### REPORT OF THE HEARING PANEL
*(Confidential Medical Staff Proceedings)*

October , 2010

*IN THE MATTER OF MARGO MUNIZ, M.D.*

The Hearing Panel previously issued its report and recommendation on September 22, 2010. Notwithstanding the verbiage contained in the Credentialing Policy, the parties had agreed that the MEC had the burden of proving by the greater weight or preponderance of the evidence that its action was neither arbitrary nor capricious and was supported by credible evidence. During the course of its deliberations, the Panel members, unskilled and not knowledgeable in matters of law, relied on guidance from the Hearing Officer, who has admitted having forgotten about the parties stipulation. Because of this they applied the incorrect standard of proof in reaching their decision.

Therefore, utilizing the correct standard of proof and upon giving due consideration to the totality of the evidence presented, including the testimony of all of the witnesses and the documents submitted into evidence, the Hearing Panel finds and concludes the MEC has shown by the greater weight or preponderance of the evidence as follows:

1. The action of the Medical Executive Committee was neither arbitrary nor capricious, but was supported by credible evidence contained in the limited record before it at the time it made its decision, including the statement of Practitioner.

2. The evidence before the Hearing Panel inexorably must lead to the conclusion that during the course of these proceedings Practitioner lacked candor in dealing with her peers.

3. The testimony of the Practitioner, when considered with other evidence in the record raises serious questions regarding her credibility. Clearly, she repeatedly asserted that Patient #5 had refused a cesarean section, a fact she later recanted in the face of contradictory testimony.

4. Lack of credibility is further demonstrated by post-incident entries which are inconsistent with other credible evidence.

5. Practitioner's testimony regarding transferring Patient #6 was initially asserted to be the patient's desire, while later it was asserted the issue of transfer was only discussed in the context of after the baby was delivered. Clearly, throughout her testimony and during her examination of her medical experts and other, Practitioner asserted it was the patient's desire to be transferred

6. Practitioner exercised poor judgment in both contemporaneous medical records entries and more especially in the statement she submitted to the MEC. Furthermore, several inconsistencies in this statement were noted.

7. Although the effect on the ultimate outcome cannot be determined with any degree of specificity, Practitioner's decision to leave the hospital when there was fetal distress and a suggestion of a placental abruption demonstrates poor clinical judgment.

8. While an argument can be made that a delay in performing a cesarean section did not effect the ultimate outcome, the greater weight of the evidence from experts on behalf of both the MEC and Practitioner is that the patient should have been sectioned much sooner. Again, this delay demonstrates poor clinical judgment on the part of Practitioner.

9. Practitioner's lack of candor and instances of a lack of credibility raise serious concerns about her ability to work with other members of the Medical Staff since this demonstrates the potential to fabricate facts. This concern is reflected by the other instances of misrepresentations, but particularly Practitioner's testimony that the pathologist told her the baby was brain dead.

Recommendation

1. The action of the Medical Executive Committee should be affirmed.

_____
Robert R. Searles, D.O.
Chair, Hearing Panel

ARMC002417