# EXHIBIT O
## to

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## Civil Action No.: 1:10-cv-00986-JFA

*Documents from Robert Searles*

FW: In the Matter of Margo Muniz, MD - Yahoo! Mail  Page 1 of 2



**FW: In the Matter of Margo Muniz, MD**  Saturday, August 21, 2010 11:53 AM
**From:** "Ernie Nauful" <nauful@bellsouth.net>
**To:** TKinsey@mail.mcg.edu, mudrunbabe@yahoo.com, chaucer93@yahoo.com, jillenter@comcast.net
**Cc:** robinscj@musc.edu
1 File (41KB)



AIKEN RE...

The attachment reflects Chris' suggestions. The format makes it a little difficult for me to understand some of them. Hopefully, you will not have the same problem. Will continue my review and await your feed back.

---

**From:** Robinson, Christopher J [mailto: robinscj@musc.edu ]
**Sent:** Saturday, August 21, 2010 11:41 AM
**To:** Ernie Nauful
**Subject:** RE: In the Matter of Margo Muniz, MD

See my comments and edits. Let me know what your feelings are on this.

Chris

Christopher J. Robinson, M.D., M.S.C.R.
Assistant Professor
Division of Maternal Fetal Medicine
Department of Obstetrics and Gynecology
Medical University of South Carolina
96 Jonathan Lucas Street, 634 CSB
Charleston, SC  29425
843-792-8261 (Office)
843-792-0533 (Fax)

If you have received this communication in error, please notify me immediately at (843)792-1427 or our compliance helpline at 1-800-296-0269. Thank you. The documents accompanying this electronic transmission may contain confidential information intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If the reader of this message is not the intended recipient, or an employee responsible for delivering the message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited.


**From:** Ernie Nauful [mailto: nauful@bellsouth.net ]
**Sent:** Saturday, August 21, 2010 11:24 AM
**To:** TKinsey@mail.mcg.edu ; mudrunbabe@yahoo.com ; chaucer93@yahoo.com ; jillenter@comcast.net ; Robinson, Christopher J
**Subject:** In the Matter of Margo Muniz, MD

Hearing Panel,

Attached is a revised version of the draft report. I added the dates and reference to Dr. DiBona, which were inadvertently

1:10-cv-00986-JFA     Date Filed 06/25/12     Entry Number 262-15     Page 3 of 7

FW: In the Matter of Margo Muniz, MD - Yahoo! Mail                                Page 2 of 2

omitted. Sorry for the oversight.

Thanks

Ernie

## AIKEN REGIONAL MEDICAL CENTERS

**REPORT OF THE HEARING PANEL**
*(Confidential Medical Staff Proceedings)*

August 20, 2010

*IN THE MATTER OF MARGO MUNIZ, M.D.*

This is the formal report of the Hearing Panel, which consisted of the following individuals, with specialties as noted: Christopher J. Robinson, M.D. (OB.GYN-Maternal Fetal Medicine), Alyssa M. Degnan, M.D. (Internal Medicine), Robert R. Searles, D.O. (Radiology), Timothy R. Kinsey, M.D. (Pediatrics), and Allison J. Buchanan, M.D. (General Surgery). Ernest J. Nauful, Jr., Esquire, served as Hearing Officer. An initial Hearing Panel was appointed, but as a result of both challenges and resignations following appointment, a this panel was appointed, without objection by the MEC or Practitioner.

These proceedings were commenced initially as the result of a summary suspension of the clinical privileges at Aiken Regional Medical Centers ("ARMC") of Margo Muniz, M.D. (hereinafter "Practitioner"). The reason for the suspension of Practitioner's clinical privileges suspension was a catastrophic outcome (death) of a 30-31 week fetus following a placenta abruption of her obstetrical patient (hereinafter "Patient #6"). This incident occurred on February 23, 2010. Following such suspension, Practitioner requested and on March 9, 2010 was granted the opportunity to appear before the Medical Executive Committee ("MEC") in order to provide her version of the circumstances surrounding the incident and to answer any questions her peers might have about the care of Patient #6. Subsequently, the Medical Executive Committee found that Practitioner's care of Patient #6 and resulting death of the baby were the result of her failure to timely recognize the abruption and timely perform a cesarean section and by administering an inappropriate medication to Patient #6.

The action of the MEC in affirming Practitioner's summary suspension, thereby revoking her clinical privileges, triggered her right to a fair hearing under the Credentialing Policy of Aiken Regional Medical Centers ("Credentialing Policy"), which is part of the governing Medical Staff Bylaws.

After notices timely and properly served hearings were conducted on June 28 and 29, and August 17, 2010 at ARMC, at which time on all parties and their respective representatives were present. Also present at the hearings were representatives of the MEC, including the Chief of Staff, Dr. Francis DiBona, and its counsel, the Practitioner and her counsel, and the Hearing Panel and Hearing Officer.

During the course of the proceedings, each party was afforded the opportunity to present evidence, cross-examine witnesses, and introduce exhibits. As provided in the Credentialing Policy, both the MEC and Practitioner were allowed the assistance of

counsel, but not direct participation of counsel in the examination or cross-examination of witnesses. However, in several instances, wide latitude was granted to the attorneys for both parties to argue legal points on behalf of their respective clients, and to interpose objections to the admission of evidence.

Although the Credentialing Policy required the MEC to first present evidence in support of it recommendation (Section 7.D.1), the Hearing Officer accommodated, without objection, requests of both parties to offer the testimony of witnesses out of order because of scheduling difficulties.

An objection was made by Practitioner to the introduction of affidavits from Patient #6 and her mother in lieu of their testimony. This objection was sustained, but over Practitioner's objection the Hearing Officer ruled that they would be allowed to testify since Practitioner had made an issue of the patient refusing to have a cesarean section and wanting to be transferred. At the conclusion of he testimony of the mother of Patient #6, the MEC again moved to introduce into evidence an affidavit of Patient #6 due to her severe emotional state. This request was denied.

Once a record is established and evidence submitted, Section 7.D.2 of the Credentialing Policy establishes the basis of any Hearing Panel recommendation in the following manner: "...the Hearing Panel shall recommend in favor of the Medical Executive Committee unless it finds that the individual who requested the hearing has proved, by clear and convincing evidence, that the recommendation that prompted the hearing was arbitrary, capricious, or not supported by credible evidence".

Due considering being given to the totality of the evidence presented, including the testimony of all of the witnesses and documents submitted into evidence, the Hearing Panel finds and concludes:

1. The action of the Medical Executive Committee was neither arbitrary nor capricious, but was well supported by credible evidence contained in the limited record before it at the time it made its decision, including the statement of Practitioner.

    **Comment [WU1]:** Here, I think we have to address the fact that the three points in the MEC committee report were not fully substantiated by the record/testimony. I do not have a copy of the record in front of me but these would include to the best of memory: 1. Failure to respond to nonreassuring fetal status 2. Delay in cesarean 3. " " can't remember; please send me a copy and I can comment further.
    **Formatted:** Highlight

2. The evidence before the Hearing Panel inexorably must lead to the conclusion that during the course of these proceedings Practitioner lacked candor in dealing with her peers.

3. The testimony of the Practitioner, when considered with other evidence in the record raises serious questions regarding her credibility. Clearly, she repeatedly asserted that Patient #5 6 had refused a cesarean section, a fact she later recanted in the face of contradictory testimony.

4. ~~Lack of credibility is further demonstrated by post-incident entries which are inconsistent with other credible evidence.~~

~~5. Practitioner's testimony regarding transferring Patient #6 was initially asserted to be the patient's desire, while later it was asserted the issue of transfer was only discussed in the context of after the baby was delivered. Clearly, throughout her testimony and during her examination of her medical experts and other, Practitioner asserted it was the patient's desire to be transferred~~

6.4. Practitioner exercised poor judgment in both contemporaneous medical records entries and more especially in the statement she submitted to the MEC. Furthermore, several inconsistencies in this statement were noted.

> **Comment [WU2]:** We probably need to list what we are talking about with this statement. I cannot remember the specific inconsistencies here. I know that there were some time issues but these were relatively minor.

7.5. There was an approximate fifty (50) minute delay between the time Practitioner was informed by Dr. Toomer that there was a placenta abruption and when the baby was delivered, such delay would not have changed the outcome.

> **Comment [WU3]:** Reword this to interval as there is no "delay" given the lack of nonreassuring fetal status.

> **Comment [WU4]:** I think I would change to "suspected placental abruption" since that is what the medical record states in the radiology report.

8.6. There is conflicting testimony regarding the use of terbutaline (breathine) in the face of a differential diagnosis of placenta abruption versus pre-term labor. Notwithstanding this conflicting testimony, the use of terbutaline in the face of a possible placenta abruption is not contraindicated.

9.7. Practitioner's lack of candor and instances of a lack of credibility raise serious concerns about her ability to work with other members of the Medical Staff ~~since this demonstrates the potential to fabricate facts~~. This concern is reflected by the other instances of misrepresentations, but particularly Practitioner's testimony that the pathologist told her the baby was brain dead.

10.8. The initial fetal monitor strip clearly demonstrated an isolated incident of fetal bradycardia, but the strip fails to reflect any evidence of fetal distress up to the time of delivery via cesarean section. Although the limited evidence available to the MEC, including Practitioner's statement and appearance, supported such conclusion, the totality of the record now before the Hearing Panel indicates there was no emergent situation requiring a cesarean section before an ultrasound could be performed and interpreted.

~~11. Practitioner testified that if her clinical privileges were restored she would resign her clinical privileges in obstetrics.~~

> **Comment [WU5]:** Not sure that this is important in this case so far as review panel is examining the action of the MEC in the case.

Recommendations

1. Practitioner's suspension is lifted and she is to continue on probation with 100% review and that there be a zero tolerance for any future incidents, clinically or in terms of her relationship with members of the Medical Staff, nursing staff, or Administration.

2. Practitioner would greatly benefit by participation in a professionalism training course to be undertaken at her expense and completed on or before

   November 15, 2010. The course curricula must be approved in advance by the MEC.

3. Any further infractions result in convening of this identical Hearing Panel.

4. Practitioner should make a special effort to reconcile differences with and give appropriate reassurance to other members of the Medical Staff and nursing staff with whom she must work while exercising her clinical privileges at ARMC.

5. ~~In light of Practitioner's willingness to resign her clinical privileges in obstetrics, and considering the totality of issues raised by these proceedings, she is urged to take such action thereby minimizing the need to interact with other medical disciplines.~~

> **Comment [WU6]:** I would strike this. This would not result in minimizing need to interact with other medical disciplines as GYN only practice also requires the MD to interact with other specialities.

_____
Christopher J. Robinson, M.D.
Hearing Panel Member


_____
Alyssa M. Degnan, M.D.
Hearing Panel Member


_____
Robert R. Searles, D.O.
Hearing Panel Member


_____
Timothy R. Kinsey, M.D.


_____
Allison J. Buchanan, M.D.