# EXHIBIT Q

to

# PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# Civil Action No.: 1:10-cv-00986-JFA

*Corrected Report of Hearing Panel*

PAGE 2/4 * RCVD AT 1/18/2011 9:35:00 AM [Eastern Standard Time] * SVR:RIGHTFAX/1 * DNIS:7859 * CSID:8036496347 * DURATION (mm-ss):02-08

## AIKEN REGIONAL MEDICAL CENTERS

### CORRECTED
### REPORT OF THE HEARING PANEL
*(Confidential Medical Staff Proceedings)*

October 12, 2010

*IN THE MATTER OF MARGO MUNIZ, M.D.*

The Hearing Panel previously issued its report and recommendation on September 22, 2010. Notwithstanding the verbiage contained in the Credentialing Policy, the parties had agreed that the MEC had the burden of proving by the greater weight or preponderance of the evidence that its action was neither arbitrary nor capricious and was supported by credible evidence. During the course of its deliberations, the Panel members, unskilled and not knowledgeable in matters of law, relied on guidance from the Hearing Officer. The Hearing Officer has acknowledged having forgotten about the parties stipulation and that he had advised the panel members incorrectly on the burden of proof. Because of this they applied the incorrect standard of proof in reaching their decision.

The Hearing Panel reconvened on October 12, 2010 in order to consider the matter utilizing the correct burden of proof. Its previous report of September 22, 2010, except as herein modified, shall remain in effect.

Therefore, utilizing the correct standard of proof and upon giving due consideration to the totality of the evidence presented, including the testimony of all of the witnesses and the documents submitted into evidence, the Hearing Panel finds and concludes the MEC has shown by the greater weight or preponderance of the evidence as follows:

1. The action of the Medical Executive Committee was neither arbitrary nor capricious, but was supported by credible evidence contained in the limited record before it at the time it made its decision, including the statement of Practitioner.

2. The evidence before the Hearing Panel inexorably must lead to the conclusion that during the course of these proceedings Practitioner lacked candor in dealing with her peers.

3. The testimony of the Practitioner, when considered with other evidence in the record raises serious questions regarding her credibility. Clearly, she repeatedly asserted that Patient # 6 had refused a cesarean section, a fact she later recanted in the face of contradictory testimony.

4. Lack of credibility is further demonstrated by post-incident entries which are inconsistent with other credible evidence.

PAGE 3/4 * RCVD AT 1/18/2011 9:35:00 AM [Eastern Standard Time] * SVR:RIGHTFAX/1 * DNIS:7859 * CSID:8036496347 * DURATION (mm-ss):02-08

5. Practitioner's testimony regarding transferring Patient #6 was initially asserted to be the patient's desire, while later it was asserted the issue of transfer was only discussed in the context of after the baby was delivered. Clearly, throughout her testimony and during her examination of her medical experts and other, Practitioner asserted it was the patient's desire to be transferred

6. Practitioner exercised poor judgment in both contemporaneous medical records entries and more especially in the statement she submitted to the MEC. Furthermore, several inconsistencies in this statement were noted.

7. Although the effect on the ultimate outcome cannot be determined with any degree of specificity, Practitioner's decision to leave the hospital when there was fetal distress and a suggestion of a placental abruption demonstrates poor clinical judgment.

8. While an argument can be made that a delay in performing a cesarean section did not effect the ultimate outcome, the greater weight of the evidence from experts on behalf of both the MEC and Practitioner is that the patient should have been sectioned much sooner. Again, this delay demonstrates poor clinical judgment on the part of Practitioner.

9. Practitioner's lack of candor and instances of a lack of credibility raise serious concerns about her ability to work with other members of the Medical Staff since this demonstrates the potential to fabricate facts. This concern is reflected by the other instances of misrepresentations, but particularly Practitioner's testimony that the pathologist told her the baby was brain dead.

Recommendation

1. The action of the Medical Executive Committee should be affirmed.

Robert R. Searles, D.O.
Chair, Hearing Panel