# EXHIBIT BB

to

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Civil Action No.: 1:10-cv-00986-JFA**

*Second Outside Review*

Aiken Regional Medical Centers
Page 15 of 18

### CASE # 5  MR 156314

Patient: Janay D.
Adm Date: 11-21-07

**Brief Synopsis of the Case:**

This case involves a twenty (20) year old female with a twenty (20) week fetal demise who was taken to the operating room (OR) for heavy vaginal bleeding. Dilation and evacuation (D&E) under ultrasound guidance was performed for approximately two (2) hours. She was taken back to the OR for continued vaginal bleeding by Dr. Muniz and two (2) other gynecology providers for an exploratory laparotomy. The patient did well and healed without sequelae from these procedures.

**Questions to be Answered:**

1. Please comment on the medical/surgical management related to the standard of care.

Unfortunately, postoperative bleeding from these types of procedures is not an uncommon occurrence.

This reviewer does not specifically think that Dr. Muniz did anything wrong, but in reading both operative reports, This reviewer believes that she is not particularly experienced in performing a second trimester D&E. The fact that she took two (2) hours to perform the first procedure and states in her operative note that she had two (2) scrub technicians evaluate the cervix for bleeding underscores this assumption.

This reviewer believes that a more prudent course for her was to either have one (1) of the more experienced physicians that she mentions, assist her with the first case, or hand off the case to a more experienced provider.

**Standard of Care Determination:**

**Q-3: An occurrence in medical/surgical care or process; significant or potentially significant impact on patient morbidity; opportunity for improvement**

CONFIDENTIAL

Aiken Regional Medical Centers
Page 16 of 18

Synthesis of data from an Ovid database search using 'second trimester loss', 'D&E', 'Dilation and Evacuation', 'risk factors for' and 'performing a dilation and evacuation for a second trimester loss' revealed that the average time to complete a second trimester D&E is thirty (30) minutes. This includes all procedures (both uncomplicated and complicated). Dr. Muniz performed the procedure in **120 minutes**. Risk of complication and need for additional experience, training and expertise is needed to safely perform a second trimester dilation and evacuation. There is an increased risk for bleeding, damage to pelvic structures, infection, need for further treatment, possible decreased fertility, and even death. This reviewer, after review of the information provided, does not believe that Dr. Muniz had the necessary prerequisite requirements to perform this procedure. She should have performed this procedure with a more experienced provider or referred the case to a more experienced provider.

References:

The American College of Obstetrics and Gynecology: "Ethics in Obstetrics and Gynecology", Section II website: http://www.acog.org/from_home/publications/ethics/

Obstetrics and Gynecology (Green Journal) website: http://www.greenjournal.org/

Ovid website: http://www.ovid.com/site/about/index.jsp

Attachment II – Additional Questions

1. *When performing an abdominal hysterectomy, is it common that uterine morcellation be done to remove the uterus?*

For a difficult abdominal hysterectomy, the uterus is sometimes amputated at the juncture of the cervix above the uterine arteries to facilitate visualization prior to removing the cervix. Sometimes in order to improve visualization, fibroids may be removed from the uterus prior to completing the hysterectomy. If this is what Dr. Muniz means by morcellation then that is within the standards of care. Otherwise, morcellation for an abdominal hysterectomy is not usually performed.

2. *Dr. Muniz is having ureteral stents placed in many of her patients prior to a hysterectomy. Is this now the standard of care or are there guidelines when one would expect stents be placed prior to surgery?*

Ureteral stents are not usually needed to perform gynecologic surgery and for a general gynecologist one would assume they would be needed infrequently.

CONFIDENTIAL

Aiken Regional Medical Centers
Page 17 of 18

Cases in which they may be useful are for patients for whom the surgeon anticipates distorted or altered anatomy such as with severe endometriosis or multiple prior abdominal surgeries. Patients with known renal or ureteral abnormalities may benefit from stent placement and some gynecologic oncologists routinely place ureteral stents prior to cancer surgeries.

In theory, ureteral stent placement would decrease ureteral injuries which have an incidence of approximately 1% in major gynecologic procedures. Unfortunately, the data has not borne this out and the greatest preventive strategy to prevent urologic injury is through knowledge of pertinent anatomy and meticulous surgical technique.

### Summary and Recommendations:

Complications can and do happen to all physicians and an occasional obstetric or gynecologic complication is, unfortunately, to be expected by a busy OB/GYN.

Knowing this, Dr. Muniz seems to have a significantly higher number of complications than would be expected from a satisfactorily performing physician with similar training and experience.

Surgically, she has a lot of patients that need to be taken back to the operating room (OR) for bleeding and she has had some bowel and bladder injuries. While this reviewer does not have data available that would suggest that the reason for the initial surgery does not meet criteria (American College of Obstetrics and Gynecology [ACOG] Quality Assessment and Improvement/Criteria Sets), there is evidence that her surgical technique and ability to recognize and appropriately manage postoperative complications is an area for improvement. This could be accomplished with mentoring from an experienced local provider or a formal retraining program at one (1) of several programs available nationwide.

Obstetrically, although there was less data to review than for her surgical care, her decision making regarding intrapartum management of complex patients is suspect, and this reviewer believes that this could be remedied by the suggestions as stated above.

In addition, there is inadequate, incomplete, or incorrect documentation for every chart reviewed. Her notes are lacking information that would be expected in managing OB/GYN patients. While this reviewer does not doubt that Dr. Muniz reviewed and synthesized all relevant data to formulate a plan, she is still held to the old dictum of 'if it isn't written down, it didn't happen.'

CONFIDENTIAL

25

Aiken Regional Medical Centers
Page 18 of 18

This reviewer respectfully suggests discussions with Dr. Muniz regarding consideration for additional training in both management of complex obstetrical patients and all aspects of gynecologic surgery, if she wishes to continue to practice the full breadth and depth of the specialty of Obstetrics and Gynecology.

Until Dr. Muniz has completed remediation, this reviewer cannot support that she continue to practice independently. It is suggested that she work with an experienced OB/GYN provider until such time arrangements for additional training are made.

*The medical review professional conducting this external review did not have a material professional, familial, financial, or other affiliation with any of the following:*
   *(1) The health plan.*
   *(2) Any officer, director, or management employee of the health plan.*
   *(3) The physician or the physician's medical group that is proposing the service.*
   *(4) The enrollee(s) and/or patient(s).*
   *(5) The facility at which the service would be provided.*
   *(6) The development or manufacture of the principal drug, device, procedure, or other therapy that is proposed by the treating physician.*

CONFIDENTIAL

36